UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMER THOMPSON,

           Plaintiff,

v.

NATIONAL RECOVERY &
INVESTIGATION SERVICES, INC.,
RASHAAD KAHEEM WOODS and
TIMOTHY A. SCOTT, SR.,

           Defendants.

_____/

## COMPLAINT

### I.  Introduction

1.  This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq*.

2.  Defendants, along with other entities and individuals to be identified in discovery,

have participated in a fraudulent scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as

many other entities located in and around Buffalo, New York, Atlanta, Georgia and Charlotte,

North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The

Shake," that includes variations of the following:  The caller calls from a blocked number or uses

a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. Often times, the loan has been repaid and there is no debt owed. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.       The use of these unlawful debt collection practices is epidemic. See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt

2

collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.     On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.     Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No.

1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II.   Jurisdiction

6.       This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.   Venue in this judicial district is proper because the pertinent events took place here.

## III.   Parties

7.       Plaintiff Summer Thompson, formerly Summer Gafford, is an adult, natural person residing in Muskegon County, Michigan.  Ms. Thompson is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Thompson is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.       Defendant National Recovery & Investigation Services, Inc. ("NRIS"), also doing business as NRIS, is an active North Carolina corporation, formed January 7, 2015.  The initial registered agent for NRIS was Rashaad Woods, 8231 Thornhaven Court, Charlotte, North Carolina 28212. On October 28, 2015, Rashaad Woods, in his capacity as President of NRIS, filed documents with the State of North Carolina, changing the registered agent for NRIS to Timothy A. Scott, Sr., 8511 Davis Lake Parkway, *Suite C6-182*, Charlotte, North Carolina 28269, however that address is merely a private mail box (No. 182) rented by defendants from The UPS Store # 5433.  According to documents filed by defendants with the Business Tax Collections Unit for Mecklenburg County, North Carolina, NRIS actually was doing business from leased office space located at 10210 Berkeley Place Drive, Suite 240, Charlotte, North Carolina 28262.  NRIS uses interstate commerce and the mails in a business the principal

4

purpose of which is the collection of debts. NRIS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NRIS is a "debt collector" as the term is defined and used in the FDCPA. NRIS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, NRIS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      NRIS maintains an internet website (www.nrisinc.com) which states "We will find them, engage them, and Recovery your assets" and boasts "NRIS has one of the strongest DEBT RECOVERY and A/R practices in the country. In efforts to mislead and intimidate consumers, the website contains multiple photographs of a uniformed police officer and a set of handcuffs. The website states that NRIS specializes in "Consumer Collections," "PayDay Loan Recovery," "Service of Process & Process Servers," "Bad Check Recovery" and "Bounty Hunting." Defendants registered the website on December 13, 2014. In efforts to conceal their identities, defendants registered the website through Domains By Proxy, LLC which is owned and operated by GoDaddy.com, LLC. According to GoDaddy.com, LLC, the website was registered by defendant's agent, a person named Nicholas A. Engel, 156 Curtis Parkway, Buffalo, New York 14223-1729. GoDaddy.com, LLC provided defendants with multiple email addresses linked to the NRIS domain name, including info@nrisinc.com, used mgr@nrisinc.com, paymentprocessing@nrisinc.com, r.woods@nrisinc.com and t.scott@nrisinc.com.

10.     In July of 2015, defendants were purchasing delinquent accounts from a person named John Zimmerman, President of an entity named Premier Asset Management, LLC, 300 North Dakota Road, Suite 501, Sioux Falls, South Dakota 57108. On July16, 2015, Mr. Zimmerman sent the account files by email from john@premierassetmgmt.com to Mr. Woods at

r.woods@nrisinc.com.

11.     Defendants have used an automated dialing system to place telephone calls to consumers using software provided by an entity named Arbeit Software LLC, locate in Buffalo, New York.  Defendants also have used debt collection software from entity named SeikoSoft LLC.

12.     NRIS has maintained multiple telephone numbers that have been used by defendants and their employees and agents to engage in the unlawful debt collection practices that are described in this complaint.  Those telephone numbers include 231-497-3062, 256-459-7249, 313-242-0759, 406-813-3629, 512-501-5789, 615-229-2948, 708-457-6912, 800-215-1106, 877-812-6379 and 877-827-4431.

13.     According to the Better Business Bureau for Southern Piedmont/Charlotte, North Carolina, NRIS is managed by a person named David King, has fifteen employees and is engaged in the business of debt collection.

14.     During all times pertinent hereto, NRIS directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Thompson that are described in this complaint.

15.     Defendant Rashaad Kaheem Woods is a natural person, age 40, purportedly residing at 8231 Thornhaven Court, Charlotte, North Carolina 28212-8225.  Mr. Woods also has resided at 53 Rosewood Avenue, Asheville, North Carolina 28801-1652. Mr. Woods has had multiple telephone numbers, including 704-900-7473, 704-393-1999, 704-536-1114, 704-606-4671, 704-858-1304 and 704-965-8842.  According to documents filed with the State of North Carolina and the County of Mecklenburg, North Carolina, Mr. Wood is an owner, officer,

director, manager, employee and agent of NRIS.  Mr. Woods uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Woods regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Woods is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Woods is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Woods is a "collection agency" and "licensee" as the terms are defined and used in MOC.

16.     During all times pertinent hereto, Mr. Woods (a) created the collection policies and procedures used by NRIS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NRIS, (c) oversaw the application of the collection policies and procedures used by NRIS and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NRIS and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Ms. Thompson as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NRIS and its  employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NRIS and its employees and agents in to collect an alleged debt from Ms. Thompson as alleged in this complaint.

17.     During all times pertinent hereto, Mr. Woods directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Thompson that are described in this complaint.

18.     On December 29, 2014, Mr. Woods rented a private mail box (No. 182) from The UPS Store #5433, located at 8511 Davis Lake Parkway, Suite C6, Charlotte, North Carolina 28269. In connection with the transaction, Mr. Woods completed and signed a United States Postal Form 1583 (Application for Delivery of Mail Through Agent), as well as a Mailbox Service Agreement with The UPS Store, in order to receive mail addressed to NRIS at private mail box No. 182. As part of the application process, Mr. Woods provided his home address, his telephone number (704) 965-8842, and his email address woods7@hotmail.com.

19.     Defendant Timothy A. Scott, Sr. is a natural person, age 49, purportedly residing at 9506 Bayview Parkway, Charlotte, North Carolina 28216-3723. Mr. Scott is the current registered agent for NRIS. Mr. Scott is a manager, employee and agent of NRIS.  Mr. Scott maintains an email address of tscott.coo@gmail.com. Mr. Scott uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Scott regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Scott is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Scott is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Scott is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20.     During all times pertinent hereto, Mr. Scott (a) created the collection policies and procedures used by NRIS and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NRIS, (c) oversaw the application of the collection policies and procedures used by NRIS and its employees and agents, (d) drafted, created, approved and ratified the tactics and

scripts used by NRIS and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Ms. Thompson as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NRIS and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NRIS and its employees and agents in to collect an alleged debt from Ms. Thompson as alleged in this complaint.

21.     During all times pertinent hereto, Mr. Scott directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Thompson that are described in this complaint.

22.     Mr. Scott previously was employed as a debt collector with a now defunct entity named Creditors Interchange, Inc. that was located in Buffalo, New York.

23.     According to the States of North Carolina and South Carolina, Mr. Scott has an extensive criminal record, going back more than a decade.

24.     On December 29, 2014, NRIS, Mr. Woods and Mr. Scott as tenants, and Noble, LLC as landlord, entered into a commercial lease agreement where NRIS, Mr. Woods and Mr. Scott rented office space located at 10210 Berkley Place Drive, Suite 240, Charlotte, North Carolina 28262. The lease was for a one-year term, running from January 1, 2015 through December 31, 2015. The lease was signed by Mr. Woods in his capacity as President of NRIS and by Mr. Scott in his capacity as Manager of NRIS.

25.     Defendants have maintained a TLOxp Account (No. 1850610) with TransUnion Risk and Alternative Data Solutions, Inc., that defendants have unlawfully used to obtain

personal, protected, private information regarding Ms. Thompson and other consumers across the country, so that defendants can contact consumers, their relatives and other third parties in order to carry out defendants' unlawful debt collection scheme. Defendants use of their TLOxp Account has been in violation of the terms of service of the subscriber agreement between defendants and TransUnion Risk and Alternative Data Solutions, Inc.

26.     Defendants in order to conceal their true identities have obtained their telephone service through RingCentral, Inc., a California corporation.

27.     Non-party Generation Next is a North Carolina non-profit educational corporation and Mr. Woods is its President.  The principal office for Generation Next supposedly is located at 5501 Executive Center Drive, Suit 218, Charlotte, North Carolina 28212.

28.     Non-party Heading In The Right Direction, Inc. is a North Carolina corporation and Mr. Woods is its President.  The principal office for Heading In The Right Direction, Inc. supposedly is located at 5501 Executive Center Drive, Suit 238, Charlotte, North Carolina 28212.

29.     Non-party R W Restaurants 1, Inc. is a North Carolina corporation owned by Mr. Woods and used to operate a Firehouse Subs restaurant located at 2290 East Franklin Boulevard, Suite 100, Gastonia, North Carolina 28054.  Non-party R W Restaurants 2, Inc is a North Carolina corporation owned by Mr. Woods and presumably used to operate a current or future Firehouse Subs restaurant. Non-party R W Restaurants 3, LLC is a South Carolina limited liability company owned by Mr. Woods and used to operate a Firehouse Subs restaurant located at 2674 Celanese Road, Suite 109, Rock Hill, South Carolina 29732.  Mr. Woods when doing business for his restaurants uses the email address rashaad.woods@firehousesubs.com.

30.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000); *Verburg et al. v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

31.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

32.     In or about May of 2008, Ms. Thompson (then Gafford) borrowed approximately $500.00 from an entity named Advance America.  The transaction was assigned account number 2004254.  Ms. Thompson used the borrowed money to purchase goods and services for personal, family and household purposes.

33.     Ms. Thompson allegedly failed to repay the alleged debt.

11

34.     Advance America sold the delinquent account and related, alleged debt to an entity named National Credit Adjusters, L.L.C. ("NCA").

35.     NCA placed the account for collection with an entity named First Asset Recovery Group, LLC "("FARG").

36.     FARG contacted Ms. Thompson and demanded payment of the debt.

37.     Ms. Thompson paid $535.00 to FARG.  By letter dated April 14, 2011, FARG wrote Ms. Thompson and confirmed that the account and related debt were paid in full.  A copy of the letter is attached hereto as Exhibit A.

38.     Despite the foregoing, defendants National Recovery & Investigation Services, Inc., Rashaad Kaheem Woods and Timothy A. Scott, Sr. stole Ms. Thompson's personal, financial and account information, or defendants otherwise acquired Ms. Thompson's stolen personal, financial and account information.

39.     Ms. Thompson denies owing any money to defendants or to anyone in connection with the account.

40.     On June 1, 2015, defendants' employee and agent placed a telephone call to Ms. Thompson in connection with efforts to collect the alleged debt.  Defendants' employee and agent stated that her name was Lisa Powell at telephone number 615-229-2948, extension 101. In the ensuing conversation, defendants' employee and agent made the following representations to Ms. Thompson:

    (a)     NRIS was attempting to collect a debt owed by Ms. Thompson in connection with her Advance America account.

    (b)     Ms. Thompson's "Complaint Docket Number" was 2004254.

(c)     "Charges" were pending against Ms. Thompson for "breach of contract and malicious intent to defraud a financial institution."

(d)     Ms. Thompson owed $894.00 but defendants were willing to settle for a payment of $300.00.

(e)     If Ms. Thompson did not settle with defendants, then the court would add filing fees, legal fees and court to the balance and the court would order Ms. Thompson to pay $2,094.00 to defendants.

Hearing those false threats and under duress, Ms. Thompson agreed to make the following installment payments to defendants by debit card: $76.37 on June 4, 2015; $125.00 on June 12, 2015; and $125.00 on June 26, 2015.

41.     On June 3, 2015, Ms. Thompson received notice from her bank that the account number for her debit card was being changed because the bank had detected suspicious activity involving efforts to deduct money from her account.

42.     On July 9, 2015, defendants' employee and agent placed a call to Ms. Thompson cellular telephone in connection with efforts to collect the alleged debt and left the following recorded message on Ms. Thompson's voice mail: This message is for Summer Gafford.  Ms. Gafford, this is Steve Rogers calling you from the Arbitration Department here in the offices of NRIS. Trying to get into contact with you ma'am in regards to an out of court settlement that you set here with our office.  I'm calling to advise you that your arrangements have been revoked, because it appears that you deliberately defaulted with our office and you're attempted to defraud our client for the second time. We are now looking to seek legal action against you. If this was not your intent, you need to contact the office today to make restitution prior to your paperwork

being filed.  Telephone number here directly is 313-242-0759.  When you're returning our call ma'am, you do need to make reference to your complaint docket number.  That number is 2004254.  Again, that number is 2004254.  Summer Gafford ma'am, you have been notified and I wish you the best of luck moving forward in court."

43.     On July 9, 2015, Ms. Thompson placed a return call to telephone number 313-242-0759 and spoke with defendants' employee and agent named Steve Rogers.  In the ensuing conversation, defendants' employee and agent stated to Ms. Thompson that defendants would be willing to settle the account and related debt for an immediate payment of $150.00, or else defendants would immediately file a lawsuit against Ms. Thompson in Tennessee.

44.     On July 13, 2015, Ms. Thompson's agent placed a call to defendants at 313-242-0759 and spoke to defendants' employee and agent who identified herself as "Investigator Bolden" at extension 109.  In the ensuing conversation, defendants' employee and agent made the following representations:

(a)     Ms. Thompson's "Case Number" was 2004254.

(b)     Ms. Thompson's file contained "a note from attorney Aaron Snipes" stating that Ms. Thompson's account "would have to be paid today in order to stop the summons from being served on her this Wednesday."

(c)     "They had her account set up for a payment total of $300.00, but I show a note here from attorney Snipes that because the paperwork is already scheduled to be handed over to the district attorney's office on Wednesday morning . . . and that is typical because once it gets to this stage, because of Wednesday she would be responsible for any legal fees and filing fees

14

as well as any court fees and that could run her about $2,200.00 as opposed to $200.00."

(d)   "What they're willing to do at this point is to settle it out for $200.00, but it would have to be paid today, but then they would go ahead and release her from those pending allegations, and they would send paperwork over to the district attorney's office letting them know that the case has been closed.

(e)   There are two pending charges, "one is for breach of contact in fraud and the second is malicious intent to defraud a financial institution is what I'm showing."

(f)   "Let me speak with the attorneys.  Just one moment. [brief pause.] What they are saying is her paperwork is scheduled to be handed over to the Muskegon County District Attorney's Office.  At that point she is going to be responsible for all those fees."

The call was then transferred to defendants' employee and agent, who stated that her name was Karen Hills and that she was working in defendants' Payment Processing Department.  Ms. Thompson's agent paid $75.00 to defendants by way of a debit card.  The payment was transferred to the account of "NRIS Charlotte NC."

45.   The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the

consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants have coerced the payment of hundreds of thousands of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

46.   Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and the their companies.

47.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that they were process servers.

48.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that they represented the original creditor of the account.

49.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that they had the legal right to collect the account.

50.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that there were legal claims pending against Ms. Thompson.

51.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that criminal charges were pending against Ms. Thompson.

52.   Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that a lawsuit had been filed against Ms. Thompson to collect the alleged debt.

53.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that a lawsuit would be filed against Ms. Thompson to collect the alleged debt.

54.     Defendants and their employees and agents in the described communications falsely represented to Ms. Thompson the amount of the alleged debt.

55.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that defendants retain lawyers to collect the debts.

56.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that defendants intended to retain lawyers to collect the alleged debt from Ms. Thompson.

57.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that lawyers were involved in defendants' efforts to collect the alleged debt from Ms. Thompson.

58.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that they were lawyers.

59.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that Ms. Thompson had committed a crime.

60.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that Ms. Thompson was going to be arrested and prosecuted for having committed a crime.

17

61. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that Ms. Thompson was going to be served with a summons and complaint.

62. Defendants did not intend to file a lawsuit against Ms. Thompson in any Michigan court in efforts to collect the alleged debt.

63. No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

64. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that Ms. Thompson's wage were going to be garnished.

65. Defendants and their employees and agents are engaged in the unauthorized practice of law.

66. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that the "District Attorney" in Tennessee was somehow involved in defendants' efforts to collect money from Ms. Thompson.

67. Defendants and their employees and agents in the described communications falsely represented and falsely implied to Ms. Thompson that the "District Attorney" in Muskegon County, Michigan was somehow involved in defendants' efforts to collect money from Ms. Thompson.

68. The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt. 15 U.S.C. § 1692d.

18

69.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

70.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

71.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

72.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

73.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

75.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

76.     The FDCPA states that it is unlawful for a debt collector to threaten to take any

19

action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

78.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

79.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

80.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

81.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

82.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

83.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

84.     The FDCPA states that it is unlawful for a debt collector to use any business,

company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

85.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

86.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

87.     Defendants and their employees and/or agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

88.     Defendants and their employees and/or agents falsely accused Ms. Thompson of committing a crime.  Ms. Thompson did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

89.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made.  *People v. Maranian*, 359 Mich. 361 (1960).

90.     Defendants and their employees and/or agents attempted to criminally extort

money from Ms. Thompson and violated M.C.L. § 750.213.

91.     The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

92.     Defendants failed to provide Ms. Thompson with the information it was required

to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

93.     Defendants and their employees, managers, owners, agents, attorneys, affiliates

and co-conspirators, yet to be identified in discovery, are engaged in a criminal organization and

scheme, through which they directly and indirectly conspire to purchase and collect delinquent

payday loans, as well as to collect money in connection with accounts they do not own or on

which no money is owed, by using the above-described debt collection practices, in violation of

the FDCPA (and various state laws, including Michigan law), and that include the use of scripted

threats of faked litigation and criminal extortion, and that include demands for payments in

amounts that exceeded the amount expressly authorized by the agreement creating the debt or

permitted by law.   Defendants and their employees, managers, owners, agents, attorneys,

affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to

collect or attempt to collect money from more than one thousand persons.  The criminal

enterprise remains active and ongoing.

94.     Each defendant and each defendant's employees, managers, owners, agents,

attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

95.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

96.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

97.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

98.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

99.     Plaintiff incorporates the foregoing paragraphs by reference.

100.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

101.     Plaintiff incorporates the foregoing paragraphs by reference.

102.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

24

b)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 3 – Michigan Occupational Code

103.     Plaintiff incorporates the foregoing paragraphs by reference.

104.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: May 19, 2016                          /s/ Phillip C. Rogers
                                             Phillip C. Rogers (P34356)
                                             Attorney for Plaintiff
                                             40 Pearl Street, N.W., Suite 336
                                             Grand Rapids, Michigan 49503-3026
                                             (616) 776-1176
                                             ConsumerLawyer@aol.com

27